UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| James McRae, | ) | |
| | ) | |
| Petitioner, | ) | 11CV5715 (VB)(LMS) |
| | ) | |
| - *against* - | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Ada Perez | ) | |
| | ) | |
| Respondent. | ) | |

TO:   **THE HONORABLE VINCENT BRICCETTI,**
       **UNITED STATES DISTRICT JUDGE**

*Pro Se* Petitioner James McRae ("Petitioner"), files this petition for a writ of habeas

corpus (the "Petition") pursuant to 28 U.S.C. § 2254, challenging his conviction under Orange

County Indictment Number # 2006-056[1] consisting of two counts of robbery in the first degree,

one count of robbery in the second degree, one count of criminal possession of a weapon in the

fourth degree, and one count of menacing in the second degree.  Respondent's Ex. 1.[2]  On

September 12, 2006, Petitioner was sentenced in County Court in Orange County, New York to

concurrent determinate terms of imprisonment of fifteen years and a five-year period of post-

release supervision for each of his convictions under the first three counts, and concurrent one-

year terms for each of the remaining misdemeanors, and was ordered to pay restitution in the

amount of $2,266.  Sentencing Transcript ("S. Tr."): 12-15.[3]  Petitioner seeks habeas relief on

two grounds:  (1) the legal insufficiency of the evidence corroborating the accomplice testimony

---

[1] Petitioner claims this is a fictitious indictment number because the indictment filed against
Petitioner was numbered 2005-989.  See Respondent's Ex. 1.  Respondent asserts that this was a
typographical error and that the indictment "was amended to reflect the proper number."
Affirmation in Opp. (Docket # 15) at n.2.

[2] Respondent's Exhibits are filed as Docket # 25.

[3] The Sentencing Transcript is filed as Docket # 22.

in light of the trial court's jury instruction; and (2) the denial of the right to counsel based on the trial court's failure to inquire sufficiently into Petitioner's complaints about counsel and denial of Petitioner's request for substitute counsel.  Petition, Docket # 1; Mem. of Law in Supp., Docket # 14.

For the reasons that follow, I conclude, and respectfully recommend that Your Honor should conclude, that the Petition should be dismissed.

## I.   BACKGROUND

### A.   The Crime

On December 17, 2005, Petitioner, Verna Russman, Brandi McMillen, and Samuel Spradley went for drinks at the Venture Inn in Port Jervis, New York.  Trial Transcript ("Tr."[4]): McMillen 33-35.  At some point that afternoon, Russman and McMillen left with Petitioner and Spradley to go to someone else's house, but then Russman and McMillen returned to the Venture Inn.  Tr.: McMillen 35-36, 39; Russman 136.  While at the Venture Inn's bar, Russman began to flirt with Kenneth Van Orden, who thereupon showed Russman his wallet with two thousand dollars inside.  Tr.: McMillen 39-41; Van Orden 105-08, 115; Russman 133-34.  Russman and Van Orden then left the bar for the Comfort Inn, where they rented a room.  Tr.: Russman 137-39; Van Orden 108.  Petitioner, McMillen, and Spradley followed Russman and Van Orden to the Comfort Inn, and along the way, Petitioner and Spradley discussed robbing Van Orden.  Tr.: McMillen 42-43.  After discovering the Comfort Inn's bar was closed, Russman and Van Orden left for the Back Track Inn in Unionville, New York to patronize its bar.  Tr.: Van Orden 109; Russman 138-39, 141; Greiner[5] 85.  Petitioner, Spradley, and McMillen followed them as they

---

[4] "Tr." refers to testimony from Petitioner's trial held on June 19-21, 2006, Docket # 21.

[5] Christine Greiner was a witness who worked at the Comfort Inn.  Tr.: Greiner 83.

changed locations. Tr.: McMillen 45. When Van Orden noticed that he and Russman were being followed, he asked Russman if she knew the people following them. Tr.: Van Orden 109-10. Russman told Van Orden not to worry about it. Tr.: Van Orden 110; Russman 142, 156, 163. Van Orden and Russman had drinks at the Back Track Inn while the others laid in wait to rob Van Orden. Tr.: McMillen 46. Upon leaving the bar, Russman told Van Orden she needed to go to the bathroom and asked him if she could go to the bathroom behind his truck. Tr.: Van Orden 111.[6] While Russman was behind the truck, and Van Orden was unlocking the truck door, Petitioner and Spradley grabbed Van Orden from behind, threw him face first into a snowbank, held a knife to his neck, and stole his wallet. Tr.: Van Orden 111-14; Russman 143-44. Petitioner, McMillen, Russman, and Spradley then fled the scene in Petitioner's car. Tr.: McMillen 47-48; Russman 145-46. Van Orden testified to seeing a large black car fleeing from the parking lot. Tr.: Van Orden 115. Van Orden then called his daughter-in-law for a ride home. Tr.: Van Orden 115. Once Van Orden got home, his wife called the police on his behalf, and Port Jervis police officers came to his house. Tr.: Van Orden 116. When Van Orden spoke to the police, he told them what had occurred but omitted information about going to the motel because he did not want his wife to know. Tr.: Van Orden 118.

After fleeing the scene, Petitioner and the three accomplices proceeded to Pennsylvania where McMillen checked them into a motel using money given to her by Petitioner. Tr.: McMillen 48; Amin[7] 86-88; Russman 147-48. The next day, after spending time at Petitioner

---

[6] Russman testified that she asked Van Orden to serve as the look-out while she went to the bathroom between a van and a truck parked outside the bar. Tr.: Russman 142-43.

[7] Manish Amin was a witness who worked at the Paramount Motel in East Stroudsburg, Pennsylvania, the motel to which Petitioner and his accomplices fled. Tr.: Amin 86-87; Russman 147-48.

and Russman's friend's house, the four of them returned to McMillen's home in Port Jervis, New York.  Tr.: McMillen 49; Russman 148.  On December 20, 2005, after consulting her father, McMillen reported the robbery to the Deer Park Police Department.  Tr.: McMillen 49-50.  The Deer Park Police then contacted the New York State Police, who were already investigating the robbery.  Tr.: Golding 180.  The State Police interviewed McMillen, and she brought them to her apartment building.  Tr.: Golding 180-81.  The State Police arrested Spradley as he was leaving the building; Petitioner and Russman were arrested at McMillen's home.  Tr.: Golding 181, 184-85.  Upon arrest, police found in both Petitioner's and Spradley's possession knives that made clicking sounds when opened and located Petitioner's blue Grand Marquis parked in the vicinity.[8]  Tr.: Golding 182-88.  In the course of their investigation, the police recovered Van Orden's hat from the parking lot at the Back Track Inn.  Tr.: Golding 178.  Van Orden's wallet, which had been thrown out of the window of Petitioner's vehicle after the robbery, was never recovered.  Tr.: Russman 147; Golding 199-200.  The police executed a search warrant for Petitioner's vehicle and recovered two letters addressed to Petitioner as well as a certificate of title for the vehicle, which was registered to Petitioner.  Tr.: Golding 188, 195-97.

At trial, both Russman and McMillen testified against Petitioner.  Russman testified that, among other things, Petitioner was the one who held the knife to Van Orden's neck.  Tr.: Russman 152-53, 157-58.  McMillen also testified to the roles played by herself, Petitioner, Spradley, and Russman in the robbery.  Tr.: McMillen 43, 46-48, 69, 71, 73-77.  Petitioner, who testified in his own defense, stated that on December 17, 2005, the date of the robbery, he was in Norfolk, Virginia visiting an old Navy buddy.  Tr.: McRae 206.  He stated that he had never seen

---

[8] Van Orden testified to hearing a clicking sound during the commission of the robbery and seeing a similar car to the one found near the arrest speed away after he had been robbed.  Tr.: Van Orden 113-15.

4

Van Orden before the trial, and that the first time he ever met Russman, McMillen, and Spradley was on December 20, 2005. Tr.: McRae 206-08. Petitioner testified that the knife found on him by the police belonged to McMillen and that she had given it to him so that he could roll a marijuana blunt for her. Tr.: McRae 209-10.

**B.    Procedural History**

Petitioner was indicted in Orange County, New York (Indictment # 2006-056) on five counts: counts one and two were for Robbery in the First Degree (N.Y. Penal Law §§ 160.15(3) and (4)), count three was for Robbery in the Second Degree (N.Y. Penal Law § 160.10(1)), count four was for Criminal Possession of a Weapon in the Fourth Degree (N.Y. Penal Law § 265.01(2)), and count five was for Menacing in the Second Degree (N.Y. Penal Law § 120.14(1)). Respondent's Ex. 1. After a jury trial, Petitioner was convicted on all counts. Tr.: 375-76. On September 12, 2006, Petitioner was sentenced to concurrent determinate terms of imprisonment of fifteen years and a five-year period of post-release supervision for each of the first three counts, and concurrent one-year terms for the remaining misdemeanors. S. Tr.: 12-14. Petitioner was also ordered to pay restitution in the amount of $2,266, and the trial judge issued orders of protection for the benefit of Van Orden and McMillen. S. Tr.: 14-15. On direct appeal, Petitioner, proceeding *pro se*, claimed that there was insufficient evidence for the conviction since there was insufficient evidence to corroborate the accomplice testimony; that the trial court failed to make sufficient inquiry into Petitioner's complaints regarding his attorney and his request for substitution of counsel; that the trial court erred in refusing to charge the jury on the affirmative defense to robbery under count one of the indictment; and that the trial court's sentence was harsh and excessive. Respondent's Ex. 2. On September 29, 2009, the Appellate Division, in a 3-2 decision, modified the judgment by vacating Petitioner's conviction of robbery

5

in the first degree under count one of the indictment and ordering a new trial on that count and, as modified, affirmed the judgment of conviction.  People v. McRae, 65 A.D.3d 1382 (2d Dep't 2009).  Thereafter, following remittal of the count of robbery in the first degree to the County Court, the People consented to dismissal of that count.  Affirmation in Opp. ¶ 6.

Petitioner then sought to appeal from the Appellate Division decision, which was denied by the New York Court of Appeals on December 17, 2009.  People v. McRae, 13 N.Y.3d 903 (2009).  Petitioner also moved for re-argument in the Appellate Division and sought leave to appeal through one of the dissenting Appellate Division justices.  Respondent's Exs. 7 & 8.  On January 14, 2010, the Appellate Division denied Petitioner's motion for re-argument.  Respondent's Ex. 11.   The dissenting Appellate Division justice, however, granted Petitioner's application for leave to appeal to the Court of Appeals.  Respondent's Ex. 12.  Among other claims, Petitioner reiterated to the Court of Appeals his claims regarding the legal sufficiency of the evidence corroborating the accomplice testimony and the lack of meaningful inquiry into Petitioner's application to have his counsel relieved and substitute counsel appointed.  Respondent's Exs. 13, 14 & 15.  On July 1, 2010, the Court of Appeals affirmed the Appellate Division's decision and order.  People v. McRae, 15 N.Y.3d 761 (2010).  Subsequently, on November 17, 2010, the Court of Appeals denied Petitioner's motion for re-argument.  Respondent's Exs. 17, 18 & 19.  Thereafter, Petitioner filed the instant Petition, reiterating his challenge to the legal sufficiency of the evidence corroborating the accomplice testimony and claiming that the trial court improperly deprived him of his right to counsel.  Respondent's Exs. 20 & 21.

## II.   **DISCUSSION**

### A.   **Standard of Review**

"Habeas review is an extraordinary remedy." Bousley v. United States, 523 U.S. 614, 621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).  To be granted a writ of habeas corpus from a federal district court, a petitioner must fully and carefully comply with the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  A federal district court generally may hear "an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court" only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

When a state court has decided a claim on the merits, the federal court must apply AEDPA's deferential standard of review.  See Torres v. Berbary, 340 F.3d 63, 68 (2d Cir. 2003).  Under AEDPA, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established Supreme Court precedent "if 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a

set of materially indistinguishable facts.' " Torres, 340 F.3d at 68 (quoting Williams v. Taylor, 529 U.S. 362, 412-13 (2000)).

"[A]n unreasonable application of clearly established Supreme Court precedent occurs when a state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. (internal quotation marks and citation omitted).  While "it is clear that the question is whether the state court's application of clearly established federal law was objectively unreasonable, the precise method for distinguishing objectively unreasonable decisions from merely erroneous ones is less clear.  However, it is well-established in [the Second Circuit] that the objectively unreasonable standard of § 2254(d)(1) means that petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." Id. at 68-69 (internal quotation marks and citations omitted).

Under the second prong of § 2254(d), the factual findings of state courts are presumed to be correct.  Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997).  The petitioner must rebut this presumption by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

**B.**   **Petitioner's Claims**

    **1.**   **Legal Insufficiency of the Evidence Corroborating the Accomplice Testimony in Light of the Trial Court's Jury Instruction**

Petitioner claims that in light of the trial court's jury instruction, which required the jurors to find that the evidence corroborating the accomplices' testimony, "standing alone, tended to connect [Petitioner] to the commission of the offense," Petitioner's conviction was based on legally insufficient evidence since the corroborative evidence, standing alone, failed to do so. Mem. of Law in Supp. at 7-16.  As he did in state court, Petitioner argues in the Petition that

8

under state law, the accomplice testimony was insufficiently corroborated to support his conviction. As CPL § 60.22(1) states, "A defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense."

This claim is not a ground for habeas relief, however, since "[a]ccomplice corroboration is a matter of state law and provides no basis for federal habeas review." Scott v. Unger, No. 08-CV-0145, 2010 WL 3241825, at *13 (W.D.N.Y. Aug. 16, 2010).[9] "Although New York's criminal procedure statute requires that an accomplice's testimony be corroborated, there is no such federal constitutional right." Id. (citing Caminetti v. United States, 242 U.S. 470, 495 (1917) ("[T]here is no absolute rule of law preventing convictions on the testimony of accomplices if juries believe them.")); see also Williams v. Marshall, No. 09 Civ 7411, 2011 WL 2175810, at *14 (S.D.N.Y. Mar. 30, 2011) ("It is well established that in federal court a conviction can stand on accomplice testimony alone: there is no absolute rule of law preventing convictions on the testimony of accomplices if juries believe them. A conviction may be sustained on the basis of the uncorroborated testimony of even a single accomplice witness if that testimony is not incredible on its face and is capable of establishing guilt beyond a reasonable doubt. For federal law purposes, the lack of corroboration goes merely to the weight of the evidence, not its sufficiency.") (internal quotation marks and citations omitted), adopted by 2011 WL 2175806 (S.D.N.Y. June 2, 2011). Therefore, Petitioner's claim "raises only an issue of state law" and "is not a cognizable claim on habeas review." Scott, 2010 WL 3241825, at *13 (citing cases).

---

[9] In the spirit of Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009), copies of all unpublished decisions cited herein have been provided to Petitioner by the Court.

In addition, Petitioner argues in this habeas proceeding that he "was arbitrarily denied his right to have the adequacy of the proof evaluated under the law as it was charged to the jury." Reply Mem. (Docket # 28) at 2. When the jury was charged in Petitioner's criminal case, People v. Hudson, 51 N.Y.2d 233 (1980), one of the New York Court of Appeals cases that addressed the standard governing corroborative evidence under CPL § 60.22(1), stated as follows:

> To meet the statutory mandate [of CPL § 60.22(1)] the corroborative evidence must be truly independent; reliance may not to any extent be placed on testimony of the accomplice for to do so would be to rely on a bootstrap. "The <u>independent</u> evidence must be material evidence <u>other</u> than that of the accomplice and must fairly and reasonably <u>tend to connect the defendant with the commission of the crime</u> * * * It may not depend for its weight and probative value upon the testimony of the accomplice" (<u>People v Kress</u>, 284 NY 452, 460; emphasis in original).

<u>Id.</u> at 238.

At Petitioner's trial the judge instructed the jury that

> our law requires that the testimony of an accomplice must be corroborated by other evidence apart from the accomplice's own testimony.
> That is the test you must apply in determining the sufficiency of the other evidence.
> To be sufficient such other evidence standing alone must satisfy the jury that it tends to connect the defendant to the commission of the crime in such a way as may reasonably satisfy you that the accomplice is telling the truth.
> That is the test you must apply in determining the sufficiency of the other evidence.
> . . .
> In order to determine whether to give any weight to the accomplice testimony, you should do two things:
> First: You should put aside the accomplice's testimony given here in Court.
> Second: You should turn to the consideration of the other evidence as just reviewed by me.
> Under the tests that I've given you, such other evidence standing alone must tend to connect the defendant with the commission of the crime in such a way as may reasonably satisfy you that the accomplices are telling the truth.
> The other evidence need not prove that the defendant is guilty of the crime charged. All that the law requires is that the other evidence satisfy you that the defendant was in some manner involved in the

criminal transaction and that by the accomplice's involvement with the defendant, that they were telling the truth and not lying in order to serve some purpose of their own or to gain some advantage for themselves.

You, the jury, are the sole judges of the sufficiency of such other evidence to satisfy the required tests.

If you find such other evidence insufficient to satisfy the required tests, you must disregard entirely the testimony of the accomplice, Brandi McMillen, the accomplice, Verna Russman, and strike that testimony from your minds.

On the other hand, if you find such other evidence sufficient, then you may consider the testimony of Brandi McMillen and Verna Russman together with all the other evidence in the case in making your final determination of the guilt or the non-guilt of the defendant.

Tr.: 316-18.

While Petitioner's appeal was pending before the New York Court of Appeals, that court issued its decision in People v. Reome, 15 N.Y.3d 188 (2010), overruling the rule set forth in People v. Hudson "that CPL 60.22(1) does not permit consideration of corroborative evidence that depends 'to any extent' on accomplice testimony." Id. at 194.[10]  Thus, as the Court of Appeals explained, "[c]ourts may consider harmonizing evidence as well as independent evidence, while giving due weight to the difference between the two." Id.  In affirming the Appellate Division decision in Petitioner's case, the Court of Appeals held that "[b]ecause the

---

[10] As the Court of Appeals explained,

> The text of CPL 60.22 (1), requiring "corroborative evidence tending to connect the defendant with the commission of such offense," need not be read, as it was in Hudson, to require that all corroboration that depends to any degree on the accomplice's testimony be ignored.  The words "without reference to the accomplice's testimony" are not in the statute.  There can be corroborative evidence that, read with the accomplice's testimony, makes it more likely that the defendant committed the offense, and thus tends to connect him [or her] to it.

15 N.Y.3d at 194. The Court of Appeals further noted, "A number of our decisions, both before and after Hudson, are inconsistent with the Hudson rule." Id.

accomplice testimony was corroborated with independent evidence as well as evidence that

'harmonized' with the accomplice testimony, the evidence was legally sufficient to support

defendant's convictions (see People v Reome, 15 NY3d 188, 194 [2010])." People v. McRae, 15

N.Y.3d 761, 762 (2010).

Petitioner states in his memorandum of law in support of the Petition that

> the Reomo [sic] analysis of the duty of the appeals court in determining
> whether the corroborative evidence was sufficient conflicted with the
> jury's parameters of analysis in this case, in light of the trial court's
> instructions to juror [sic]. Mr. McRae's jurors were instructed by the trial
> court not to consider accomplice testimony, at all, unless it first found that
> the evidence, which did not consist of the accomplice testimony, standing
> alone, tended to connect Mr. McRae to the offense. Thus, in light of the
> instruction given to Mr. McRae's jurors, the New York Court of Appeals
> misapplied Reomo [sic] to Mr. McRae's case.

Mem. of Law in Supp. at 16 (emphasis in original). As Respondent contends, and the Court

agrees, "although legal sufficiency is a recognized federal claim, the specific challenge raised by

petitioner and the related question of whether the New York Court of Appeals correctly applied

its decision in Reome to his matter are not. Consequently, petitioner's challenge should be

rejected because it is ostensibly based on a perceived error of the application of state law."

Respondent's Mem. of Law (Docket # 15-1) at 13 (citing cases).[11]

---

[11] Notably, Reome himself filed a petition for writ of habeas corpus, claiming that "in reviewing
[his] appeal from his conviction, see People v. Reome, 15 N.Y.3d 188 [(2010)], New York's
Court of Appeals violated the Ex Post Facto Clause by retroactively applying a new,
unprecedented construction of CPL 60.22(1)." Reome v. Superintendent, Five Points Corr.
Facility, No. 9:12-CV-421 (NAM/DEP), 2015 WL 4393185, at *1 (N.D.N.Y. July 15, 2015),
appeal filed, Reome v. Superintendent, (Docket No. 15-2689) (2d Cir. Aug. 21, 2015). After
noting that Reome's argument was "correctly viewed as a due process claim," id., the district
court concluded that "the due process issue lacks merit." Id., at *2. As the court explained:

> After reviewing the cases cited by the Reome court, this Court agrees
> that the state-court decisions interpreting CPL 60.22(1) prior to Reome
> were inconsistent. Reome did not articulate a new, unprecedented
> interpretation of section 60.22(1) but rather resolved the inconsistency by

Because Petitioner does not assert a legal sufficiency claim cognizable in a federal habeas proceeding, I conclude, and respectfully recommend that Your Honor should conclude, that this claim does not entitle Petitioner to habeas relief and should be dismissed.

### 2.   Denial of the Right to Counsel

Petitioner claims that the trial court's failure to make sufficient inquiry into his complaints regarding his counsel and his request for substitution of counsel infringed on his right to a fair trial and his right to counsel under the Sixth and Fourteenth Amendments of the United States Constitution.  Mem. of Law in Supp. at 17.  Respondent contends that the trial court's denial of Petitioner's request for substitution of counsel did not deprive Petitioner of his right to counsel.  Respondent's Mem. of Law at 16.

The Supreme Court has held that "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them."  United States v. Gonzalez-Lopez, 548 U.S. 140, 151 (2006) (citations omitted).  "The [Sixth] Amendment guarantees defendants in criminal cases the right to adequate representation, but those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by

---

expressly adopting an interpretation articulated in other New York decisions before the charged conduct and trial.  See, e.g., People v. Daniels, 37 N.Y.2d 624, 629, 376 N.Y.S.2d 436, 339 N.E.2d 139 (1975), and People v. Besser, 96 N.Y.2d 136, 143, 726 N.Y.S.2d 48, 749 N.E.2d 727 (2001).  This Court agrees with Magistrate Judge Peebles that the Reome court's construction of CPL 60.22(1) was not "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue."  Rogers [v. Tennessee], 532 U.S. [451,] 456 [(2001)].

Id.; see also id., at *12 (in finding that the Court of Appeals' overruling of Hudson did not violate Reome's due process rights, the magistrate judge concluded, "In light of the sea of cases offered by the Court of Appeals explaining and applying CPL § 60.22 both before and after Hudson, petitioner was provided 'sufficient warning' as to the statute's meaning.") (citation omitted).

Thus, to the extent that Petitioner in this case might be trying to assert a similar due process claim, such claim fails.

attorneys appointed by the courts." <u>Caplin & Drysdale, Chartered v. United States</u>, 491 U.S. 617, 624 (1989).

As one district court explained,

> In the Second Circuit, it is settled law that "[o]n the eve of trial, just as during trial, a defendant can only substitute new counsel when unusual circumstances are found to exist, such as a complete breakdown of communication or an irreconcilable conflict." <u>United States v. Schmidt</u>, 105 F.3d 82, 89 (2d Cir. 1997) (citing <u>United States v. Calabro</u>, 467 F.2d 973, 986 (2d Cir. 1972)). Petitioner must therefore demonstrate good cause for the substitution of assigned counsel.

<u>Nelson v. Smith</u>, No. 9:04-CV-564, 2008 WL 2357098, at *4 (N.D.N.Y. June 4, 2008).

Thus, the question is whether Petitioner demonstrated "good cause" for the substitution of his assigned counsel. Petitioner filed an initial "motion for reassignment of counsel" on May 17, 2006, received by the trial judge on June 5, 2006 (approximately a week before jury selection), Mem. of Law in Supp. Ex. 8, which stated only that his counsel, Joseph Brown, "has not shown interest in interviewing the defendant counsel, [sic] fails to demonstrate a lack of concern[12] and has not fully explained to the defendant the charges that are before him, neither has counsel been adequate, competent or effective, demonstrating conflicts of interest with the defendant, as his client." <u>Id.</u> Thereafter, Petitioner filed a second motion seeking substitution of counsel, dated May 25, 2006, which was likewise received by the trial judge on June 5, 2006. Mem. of Law in Supp. Ex. 9. Petitioner based the second motion on claims that his counsel, among other things,

> refuses to hear any of my concerns, counsel refuses to discuss fact's [sic] of case [sic], and/or a defense. [C]ounsel and myself are in consent [sic] conflict. [C]ounsel refuses to obtain or request things needed to help present a defense. [C]ounsel only try's [sic] to argue me into taking a

---

[12] Presumably, Petitioner meant that counsel did demonstrate a lack of concern.

> plea, but refuses to give a justified or any reason in taking a plea.  Counsel
> has made false statements in regards to what I said and things said to me. .
> . . Counsel has made it clear that he intends to sit back and watch the
> prosecution.  Counsel is doing the absolute minimum in his representation
> of me. . . .

Id.[13]  In a subsequent motion submitted to the court during trial, Petitioner claimed that his

counsel threatened to insure that Petitioner received the maximum sentence if he did not accept a

plea deal.  Tr.: 168; see Reply Mem. of Law at 5.[14]  Petitioner also argued following

---

[13] Petitioner also complained about counsel's refusal to request a chance for Petitioner to "face
my accuser" at pretrial hearings "in regards to testimony concerning probable cause" and
counsel's refusal to submit a supporting affidavit seeking dismissal of the indictment based on
Petitioner's warrantless arrest without probable cause.  Mem. of Law in Supp. Ex. 9 at 1-2.
Petitioner added that counsel refused to explain why there were three indictment numbers related
to the charges against him and refused to "obtain pictures of the area in question or any
information regarding to [sic] this case such as maps, nyspin computer check, 911 calls, and the
incident/police report," which items Petitioner claimed were "needed to present my defense." Id.
at 2.

[14] It appears that Petitioner initially handed his motion papers to his assigned counsel on the first
day of trial, just before the proceedings commenced.  See Tr.: 3 (Mr. Joseph Brown: "The
defendant has given me a rather large set of papers here.  He claims they're motion papers and he
wants me to submit them to you. . . . I'm not sure what they deal with, but I do see some severe
allegations in here concerning me, which is ridiculous.  It doesn't make one bit of sense.  I want
that clear on the record.").  The trial judge did not accept the motion papers at that time, stating:

> Well, if the defendant serves [the papers] properly, all right, as we
> know, since you're involved in the case, you [counsel] make the motions
> to the Court.
> I've already decided his contention that he needed a new attorney.
> Mr. Brown, you have been representing him to the best of your ability.
> Quite obviously, there is no level the defendant will not stoop to in this
> matter in order to try to foul up this trial.
> The fact is the trial is going on and his applications have been
> absolutely groundless throughout the course of this matter.
> Quite obviously, if they're properly brought to the Court's attention at a
> proper time, then obviously, items like that at least will be read by me and
> I will make a determination.
> In this situation if in fact when you look at them if you feel the ones,
> considering the allegations against yourself, if you want to have them
> submitted as one item, I'll review them.  I'll then have to make a
> determination on them.

summations, but before the jury was charged, that Petitioner's claim in seeking substitution of counsel – that his counsel refused to discuss a defense with him – is reflected in counsel's failure to raise an alibi defense and call witnesses to corroborate Petitioner's alibi.  Tr.: 283-84; see Mem. of Law in Supp. at 18-19.  The trial judge denied Petitioner's repeated applications for substitution of counsel.

On direct appeal, the Appellate Division held that Petitioner's "contention that the trial court failed to sufficiently inquire into his request for substitution of counsel is . . . without merit."  People v. McRae, 65 A.D.3d at 1383 (citations omitted).  In affirming the decision of the Appellate Division, the New York Court of Appeals held that "the trial judge did not abuse his discretion when denying defendant's eve-of-trial application to relieve his second court-appointed attorney and to appoint substitute counsel."  People v. McRae, 15 N.Y.3d at 762. Petitioner is entitled to habeas relief on this claim only if the Court of Appeals decision is "contrary to" or "an unreasonable application of" clearly established federal law.

In Petitioner's case, on June 13, 2006, just prior to the commencement of jury selection, the trial judge adverted to the fact that he had issued a written decision that day, denying Petitioner's motion for new counsel.  Tr. June 13, 2006 (Docket # 20): 2-3 (Defendant James McRae: "Excuse me, Your Honor, I put in the paperwork for –"; The Court: "And it's been

> Up to now you've done nothing but represent him to the finest degree of legal advocacy.  I'm not about to get you off this case because the defendant wants to delay the trial because he does not want to face up to the reality of the situation and, that is, that we've selected 14 jurors to try this case.  That's really the real situation here.
> Let us proceed.

Tr.: 3-5.  Following this colloquy, the trial commenced.  The trial judge did not address Petitioner's motion until the second day of the trial, just before the last witness for the prosecution took the stand.  Tr.: 168 ("THE COURT:  Before we start with our last witness, there was a hand-delivered pro se application made by the defendant.").

16

denied.  I wrote a decision and signed it today.").  The trial judge's decision stated as follows:

> The defendant seeks an Order for reassignment of counsel on the
> ground that his assigned counsel, Joseph P. Brown, Esq., is inadequate,
> incompetent and ineffective and has demonstrated a conflict of interest.
> Defendant [sic] supporting Affidavit set[s] forth no specific facts or legal
> basis to warrant the reassignment of counsel.  The nature of the alleged
> conflict of interest was not set forth.
> Defendant's Motion is denied in as much as he has failed to set forth
> specific grounds to establish that his assigned counsel is not providing him
> with meaningful representation.  The Court has presided over the
> proceedings related to the Indictment, which included submission of an
> Omnibus Motion, plea discussions and a Pre-Trial Hearing and is satisfied
> that defendant's attorney is providing meaningful representation to
> defendant.

Docket # 39.

Petitioner notes in his memorandum of law in support of the Petition that "on June 13,

2006 the trial court ignore [sic] the May 25, 2006 motion and rendered a decision on the May 17,

2006 motion only.  The trial court denied the May 17, 2006 motion on the grounds that Mr.

McRae 'set forth no specific facts or legal basis to warrant the reassignment of counsel.' "  Mem.

of Law in Supp. at 17.  Nonetheless, during the June 13, 2006, court proceedings Petitioner

reiterated to the trial judge some of the same arguments made in his May 25, 2006, motion:

> I also want to let you know this counsel hasn't went over no
> defense with me, only going to argue any credibility issues and not going
> to present any defense for me.  So therefore, I'm not receiving a fair trial
> in any way, I want that noted in the record.  Not going to argue anything
> about the elements, argue any inconsistent statement, or any other factors,
> as far as this case goes.  He is – he is going to let the DA present
> whatever.  He is going to argue credibility issues of whether a witness is
> credible or not, which has nothing to do with the facts of the case.

Tr. June 13, 2006: 3.

The judge responded,

> Mr. McRae, Mr. Brown is a very seasoned attorney.  He has won
> many cases in this courtroom.  He has represented every person who I

17

> have ever charged him to represent, to the best of his ability.  He does a
> very fine job and there is no doubt in my mind he is going to do a very
> fine job for you. . . .

Tr. June 13, 2006: 3-4.[15]  As the Second Circuit has held, "It is settled that where a defendant

voices a seemingly substantial complaint about counsel, the court should inquire into the reasons

for dissatisfaction."  McKee v. Harris, 649 F.2d 927, 933 (2d Cir. 1981) (internal quotation

marks and citation omitted).  However, "[w]here the failure to inquire causes the defendant no

harm, that procedural irregularity cannot of itself be a basis for granting the writ."  Id.  Indeed, if

the "proffered reasons [for dissatisfaction with counsel] are insubstantial and the defendant

receives competent representation from counsel, the court's failure to inquire further constitutes

harmless error."  Carpenter v. Conway, No. 07-CV-3602, 2011 WL 795860, at *5 (E.D.N.Y.

Feb. 25, 2011) (citing McKee, 649 F.2d at 933).  Here, Petitioner has shown no harm that he

suffered as a result of the trial judge's failure to inquire further into Petitioner's request for new

counsel.  Moreover, his assigned counsel provided competent representation, giving an opening

statement, engaging in vigorous cross-examination of the prosecution's witnesses, making

objections, making a motion to dismiss at the close of the prosecution's case based on a lack of

corroboration of the accomplice testimony, renewing the motion to dismiss at the close of the

entire case, and delivering a vigorous summation at the close of the trial.  See generally Tr.: 1-

281.  "Counsel's competent representation during trial renders harmless any failure on the part of

the trial court to inquire into [Petitioner's] motion for reassignment."  Lopez v. Graham, No. 10-

---

[15] Thereafter, during those same proceedings, Petitioner's assigned counsel stated, "Your Honor,
looking at the Court's decision, I see that Mr. McRae raised an issue that I had a conflict of
interest.  I can state to the Court, that for the record, as far as I know, there is no conflict of
interest that I have in this case."  Tr. June 13, 2006: 9.  The trial judge responded, "Well, that
was a bare bones assertion on his part, and quite obviously, absent any type of a statement, and
now, with your affirmative statement in the other matter, there is no conflict.  It is denied in its
entirety."  Id.

CV-0468 (NGG), 2012 WL 1865502, at *10 (E.D.N.Y. May 22, 2012), aff'd, 519 F. App'x 52 (2d Cir. 2013). Furthermore, "[a]lthough the trial court did not inquire further into the reasons for Petitioner's dissatisfaction, when the 'reasons [an accused complains about his counsel] are made known to the court, the court may rule without more.' " Nelson, 2008 WL 2357098, at *5 (quoting McKee, 649 F.2d at 934 (citation omitted)). Accordingly, this alleged failure of the trial judge to make inquiry, after being apprised in open court of Petitioner's reasons for seeking new counsel, did not result in a violation of Petitioner's right to counsel.

Petitioner also bases this claim on the assertion that his counsel threatened to insure that Petitioner received the maximum sentence if he did not accept a plea deal. Reply Mem. of Law at 5. Thus, just before the last prosecution witness was called at Petitioner's trial, the trial judge noted on the record that "there was a hand-delivered pro se application made by [Petitioner]" and that in the application, Petitioner was "requesting he be given a Clayton Hearing[16]" and was "also stating that his attorney's performance is denying the effective assistance of counsel and then he stated that Mr. Brown made it clear that he either pleas guilty and receives three and a half years or he'll go along with the DA and the Judge and make sure I do twenty-five years." Tr.: 168.[17] The trial judge asked, "Did you make such a statement like that to [Petitioner], Mr.

---

[16] See Docket # 39-2 (the application is titled, "Notice of Motion for a Clayton Hearing Pursuant to People v. Clayton"). In People v. Clayton, 41 A.D.2d 204 (2d Dep't 1973), the court held that a hearing is required prior to deciding whether to grant dismissal of an indictment in furtherance of justice pursuant to New York Criminal Procedure Law § 210.40.

[17] The pro se application, which is dated June 16, 2006, reiterates Petitioner's earlier statements in open court on June 13, 2006, as well as in his May 25, 2006, motion for substitution of counsel, that if Petitioner did not take a plea, his lawyer "said he would not properly represent me, that he would only argue credibility issues of witness [a]nd not the fact [sic] of the case . . ." Docket # 39-2 at 10. The application also states that on that date, Petitioner had just been visited at the Orange County Jail by his appointed counsel, at which time counsel "made abundantly clear that he has a problem with black people AND/OR has a hatred toward me." Id. at 2. There is nothing in the record to support this additional allegation, and Petitioner does not mention it in

Brown?" Id. Brown responded, "I have no control over what [Petitioner] does.  If he happens to

be convicted by this jury, clearly the exposure is up to twenty-five years. . . . I believe the Court

had advised him of that." Id.  The trial judge then acknowledged that he did advise Petitioner of

that fact. Id.  The trial judge denied Petitioner's application in its entirety, stating,

> [T]here is no basis for any of the relief being sought on the most
> [sic], especially the inadequacy of counsel that he's trying to raise here.
>     Mr. Brown's asking very cogent questions.  He's been questioning
> the witnesses.  He's been doing the job he's supposed to do.
>     . . .
>     As to the statement Mr. Brown keeps on saying to him that he has
> to take three and one-half or he's going to get twenty-five years in states
> prison.
>     I think it should be noted that I don't believe there is any plea offer
> out there any more for this defendant to receive three and a half years.

Tr.: 170.

To the extent that Petitioner contends that the trial judge failed to inquire adequately into

the allegation that he was told to accept a plea deal or else counsel would make sure that

Petitioner received the maximum sentence, Reply Mem. of Law at 5-6, as with the trial judge's

ruling on June 13, 2006, "when the 'reasons [an accused complains about his counsel] are made

known to the court, the court may rule without more.' " Nelson, 2008 WL 2357098, at *5

(quoting McKee, 649 F.2d at 934 (citation omitted)).  Moreover, dissatisfaction with an

attorney's advice that a defendant plead guilty "does not constitute good cause for substitution of

counsel." Estwick v. Walker, No. 01 Civ. 2174 (WHP)(GWG), 2004 WL 1151581, at *13

(S.D.N.Y. May 24, 2004).  "The starting point for effective representation is a realistic

assessment of the prospects of success in light of the risks of failure.  It is precisely this

balancing process which leads many defense lawyers to advise their clients to enter plea

---

his papers submitted in support of this Petition.

negotiations." <u>McKee</u>, 649 F.2d at 932.  "As the Second Circuit has noted, if such pessimistic

forecasts of the case rose to the level of good cause entitling a defendant to a new attorney,

'appointed counsel could be replaced for doing little more than giving their clients honest

advice.' " <u>Estwick</u>, 2004 WL 1151581, at *13 (quoting <u>McKee</u>, 649 F.2d at 932) (internal

quotation marks and citation omitted)).  Indeed, Petitioner's counsel stated on the record during

the June 13, 2006, court proceedings prior to jury selection that he had advised Petitioner to

accept a plea deal, and counsel provided the reasons why he had done so.[18]

Finally, Petitioner alleges that his claim in his motions that he needed substitute counsel

because counsel refused to discuss Petitioner's defense with Petitioner is exemplified by

counsel's failure to raise an alibi defense and call witnesses to corroborate Petitioner's alibi.

Mem. of Law in Supp. at 18-19.  However, the issue of an alibi defense did not arise until the

last day of trial, after summations but prior to the jury being charged.  In rejecting Petitioner's

claim that he had presented an alibi defense at trial, the judge stated,

---

[18] As counsel explained,

> Your Honor, before the jury comes in, I would like to put on the record, that
> I have reviewed the testimony transcript of the first trial.  I was here
> yesterday when the other co-defendant entered a plea, and from what I
> understand, she may very well be testifying against Mr. McRae. . . . I
> advised him that in my opinion that he should accept the plea that had been
> offered.  The offer was a plea, which would carry a sentence of three and a
> half years, and that I understand my client has rejected that.

Tr. June 13, 2006: 4-5.  After colloquy on another issue, the trial judge stated, "Now, Mr. Brown,
go ahead.  Before you were interrupted when you said you advised him that . . . he should accept
this plea, after having read the testimony and also after having heard Miss Russman's plea
yesterday, where she inculpated him.  In fact, she said that he is the one that took the money. . .
." Tr. June 13, 2006: 6.  Counsel thereafter stated, "And Your Honor, after going over that, at
length with Mr. McRae, he has indicated to me that he will not accept that plea offer and wishes
to, in fact, reject my advice and go to trial." Tr. June 13, 2006: 7.

> Sir, you merely took the witness stand and said . . . I happened to be in Virginia.
>
> No one knew that until you took the witness stand, sir.  As such, that alibi defense does not constitute an alibi defense.  It's your . . . own statement under oath that you were there, all right.
>
> Had you informed everybody of that a long time ago and who the witnesses would be of such an alibi, the People would have the opportunity to go out and research and investigate whether you were there or not.  None of this happened.
>
> As such you're not entitled to an alibi charge, sir.

Tr.: 283.  In response, Petitioner stated,

> I submit a complaint about counsel not discussing a defense with me and not going over this issue with me.
>
> I made the complaint and it was denied.  I couldn't provide it.
>
> I submitted in the papers that I have these witnesses I wanted to call that wouldn't be called.[19]
>
> I addressed all these wishes, but they were pushed to the side and was told it was irrelevant.

Tr.: 283-84.  Despite Petitioner's statement, the papers submitted to the trial judge by Petitioner,

which are included in the record provided in this habeas proceeding, do not mention any

thwarted efforts to call alibi witnesses or raise an alibi defense.  See Mem. of Law in Supp. Exs.

8-9; Docket # 39.

Nonetheless, the trial judge changed his mind and decided to give an alibi charge.  Tr.:

284.  In doing so, the judge asked Petitioner's counsel when Petitioner told counsel about his

---

[19] In his pro se application reviewed by the judge on June 19, 2006, Petitioner recites a number of complaints about jury selection, after which he states, "I do not feel a group of my pairs [sic] was selected in any form.  The Honorable Jeffery [sic] G. Berry asked if the defendant wanted to make an application, I didn't and do not know the meaning of an application.  But I did ask my lawyer to request things such as having defence [sic] witnesses summoned to court, requesting and obtaining complete criminal and mental records of prosecution witnesses and a complete disposition of such records."  Docket # 39-2 at 9.  This vague statement about "defence [sic] witnesses," buried in the middle of a 12-page motion seeking a Clayton hearing, in no way supports the notion that assigned counsel was aware of Petitioner's alibi defense but prevented Petitioner from calling alibi witnesses.  In any event, as explained infra, there is no basis to disturb the trial judge's factual finding that Petitioner's claim of an alibi defense was not credible.

22

alibi defense, to which counsel responded that he had just found out about the alibi defense that

day.  Tr.: 284-85.  The judge then noted for the record,

> Just let the record reflect this defendant sent motions, letters, continuously wanted to address the Court outside the scope of his being a defendant, has done everything not even permitted in matters.
> This Court has bent over backward to uphold this defendant's rights, has bent over backward despite all of the items, everything he's done in this matter to foul up this trial and to foul up everything else.
> Now he doesn't even produce an alibi witness.  Yet he asks for an alibi charge based upon his testimony, which occurred yesterday afternoon, that he was in Virginia at the time that this occurred and that he had not met anybody, any of these three defendants until the morning of the 20 of December of 2005 when, about four or five hours later, I guess, everybody was arrested, at least Mr. Spradley was outside and then, finally, Ms. Russman and he inside.
> That's absolutely incredible testimony.  It's incredible that he had this alibi defense and he knew it all the time and yet he didn't ever mention it to anybody and here he is making motion after motion after motion.[20]
> That is incredible and any Appeals Court that reviews this record should understand the disingenuous request of this defendant.  The fact he had this defense, he knew this defense and in no manner whatsoever did he bring it to his attorney's attention, did he bring it to the Court's attention.
> To the extent that I can give an alibi charge over the People's objection . . . I will give an alibi charge just so we can bend over even further for this defendant's rights.

Tr.: 285-86.

Because Petitioner failed to raise the issue of an alibi defense in any of his papers seeking

the substitution of counsel, he cannot now claim that the trial judge failed to make an appropriate

inquiry into this issue in denying Petitioner's motions for new counsel.  As the Second Circuit

---

[20] The record reflects that Petitioner had submitted at least two other pro se motions – a June 7, 2006, motion requesting an order to suppress any physical evidence obtained as a result of execution of the search warrant, and a May 5, 2006, motion seeking an order dismissing the indictment on the ground that it was based on a warrantless arrest without probable cause and seeking suppression of tangible evidence seized by police – both of which were also decided by the trial judge on June 13, 2006.  See Docket # 39-2 at 38; see also Tr. June 13, 2006: 3 ("DEFENDANT JAMES MCRAE:  I also put a motion on for forfeiture of violations, with no probable cause that I put in.  THE COURT:  That's been denied, also.").

has stated, "we cannot agree . . . that good cause [for the substitution of assigned counsel] is to be determined solely according to the subjective standard of what the defendant perceives." McKee, 649 F.2d at 932. "Indeed, a purely subjective standard would convert the requirement of good cause into an empty formality, since the defendant would be entitled to demand a reassignment of counsel simply on the basis of a 'breakdown in communication' which he himself [or she herself] induced." Id. Thus, whatever Petitioner might have perceived with respect to the issue of his alibi defense, the trial court cannot be faulted for failing to address a complaint concerning assigned counsel that Petitioner never made, and this alleged failure of the trial judge did not result in a violation of Petitioner's right to counsel.

Although Petitioner challenges the New York Court of Appeals decision on this claim as "an unreasonable determination of the facts in light of the evidence presented in the state court proceedings, U.S.C.A. 28 § 2254 (d)," Mem. of Law in Supp. at 19; see 28 U.S.C. § 2254(d)(2), the factual findings of the state court are presumed to be correct, Nelson, 121 F.3d at 833 (2d Cir. 1997), and such presumption can only be rebutted by "clear and convincing evidence," 28 U.S.C. § 2254(e)(1), which Petitioner has failed to present. Thus, there is no basis to disturb any of the factual findings underlying the trial judge's decisions on Petitioner's repeated motions for the substitution of counsel, including his finding that Petitioner's claim of an alibi defense was not credible, and this is not a ground for habeas relief from the New York Court of Appeals decision affirming the trial judge's decisions.

Moreover, in determining whether the New York Court of Appeals decision is contrary to, or an unreasonable application of, clearly established federal law under § 2254(d)(1), "it is well-settled that the more common complaints defendants make in efforts to be rid of an appointed attorney, namely, complaints regarding strategic decisions such as whether to file

24

certain motions, pursue certain evidentiary leads, object to the introduction of certain evidence at trial, and call certain witnesses, do not give rise to a conflict of interest, or otherwise warrant habeas relief." Carpenter, 2011 WL 795860, at *6 (internal quotations and citations omitted). As explained above, the trial judge sufficiently inquired into Petitioner's claims of dissatisfaction with his assigned counsel insofar as they were presented to the judge and, to the extent that Petitioner's complaints touch upon "strategic decisions," see, e.g., footnote 13, supra, they do not warrant habeas relief.[21]

Thus, I conclude, and respectfully recommend that Your Honor should conclude, that this claim does not entitle Petitioner to habeas relief and should be dismissed.[22]

---

[21] Petitioner, for the first time in his reply brief, catalogues a long list of failings of his trial counsel based on the alleged lack of communication, Reply Mem. of Law at 8-10, but these failings likewise fall into the category of "strategic decisions" that "do not give rise to a conflict of interest, or otherwise warrant habeas relief." Moreover, many of these failings relate to counsel's actions during the trial itself, and therefore, they were neither raised with nor considered by the trial judge in deciding Petitioner's motions for the substitution of counsel. If Petitioner is suggesting that his appointed counsel was ineffective, a claim for ineffective assistance of counsel is different from a claim for failure to appoint new counsel, see Estwick, 2004 WL 1151581, at *4, and Petitioner has never asserted a claim for ineffective assistance of counsel either on direct appeal, in a N.Y. Crim. Proc. Law § 440.10 motion, or in the Petition.

[22] For the first time in his reply brief, Petitioner argues that the state court abused its discretion in denying his motion for substitution of counsel under the four-factor test articulated in United States v. John Doe # 1, 272 F.3d 116 (2d Cir. 2001). See Reply Mem. of Law at 4-10. In John Doe # 1 the Second Circuit stated that it considered the following four factors when deciding whether a district court abused its discretion in denying a motion for the substitution of counsel: "(1) whether defendant made a timely motion requesting new counsel; (2) whether the trial court adequately inquired into the matter; . . . (3) whether the conflict between the defendant and his [or her] attorney was so great that it resulted in a total lack of communication preventing an adequate defense[,]" and "[(4)] whether the defendant substantially and unjustifiably contributed to the breakdown in communication." 272 F.3d at 122-23 (internal quotation marks and citations omitted). Even applying this four-factor test, the Court concludes, and respectfully recommends that Your Honor should conclude, that the New York Court of Appeals' decision that the trial judge did not abuse his discretion in denying Petitioner's motion for substitution of counsel was neither contrary to, nor involved an unreasonable application of, clearly established federal law.

First, Petitioner's initial motions were received by the trial judge only a week before jury selection, and Petitioner reiterated his complaints on the day that jury selection began, as well as

## CONCLUSION

For the reasons stated above, I conclude, and respectfully recommend that Your Honor should conclude, that the Petition should be dismissed. As the Petition presents no questions of substance for appellate review, I conclude, and respectfully recommend, that a certificate of probable cause should not issue. Rodriguez v. Scully, 905 F.2d 24 (2d Cir. 1990) (per curiam); Alexander v. Harris, 595 F.2d 87, 90-91 (2d Cir. 1979). I further conclude, and respectfully recommend, that the Court should certify pursuant to 28 U.S.C. § 1915(a) that an appeal from

---

the first and second days of the three-day trial. Then, on the third day of the trial, Petitioner mentioned the court's denial of his motions for new counsel in the context of seeking an alibi charge. Thus, the trial judge did not abuse his discretion in finding that Petitioner's motions were not timely and were intended to delay the trial. Second, as previously explained, the trial judge's inquiry into Petitioner's dissatisfaction with his assigned counsel was adequate, and to the extent that it could be deemed inadequate, Petitioner suffered no harm. Third, there is no evidence that the conflict between Petitioner and his assigned counsel was so great that it resulted in a total lack of communication. As reflected in the state court transcripts, assigned counsel provided Petitioner with competent representation, and assigned counsel's "willingness to continue to represent Petitioner after his motion to retain new counsel was denied undermines any assertion that there was an irreconcilable breakdown in communication." Nelson, 2008 WL 2357098, at *4; see also Lopez, 2012 WL 1865502, at *11 ("[T]he record does not suggest that trial counsel failed to adequately perform or communicate with [the petitioner] during the trial itself. Thus, even assuming that there was a total lack of communication between [the petitioner] and his counsel prior to trial, [the petitioner] has not shown that this lack of communication prevented an adequate defense.") (internal quotation marks, alteration, and citation omitted). Fourth, Petitioner made only conclusory allegations that his assigned counsel failed to communicate with him and otherwise complained about his dissatisfaction with counsel's strategic decisions, and thus, it is unclear whether there even was a breakdown in communication. Nonetheless, to the extent that Petitioner contends that the breakdown in communication is reflected in assigned counsel's failure to call alibi witnesses, even though assigned counsel stated on the record that he did not know about Petitioner's alibi defense until the last day of trial, the Court concludes, based on the trial judge's finding that Petitioner's belated claim of an alibi defense was not credible, that Petitioner "substantially and unjustifiably contributed to" any such possible breakdown in communication. In any event, even if the fourth factor weighs neither for nor against Petitioner, given that the other three factors weigh against Petitioner, application of the four-factor test supports the Court's conclusion that Petitioner is not entitled to habeas relief on this claim.

this order would not be taken in good faith.  See Coppedge v. United States, 369 U.S. 438 (1962).

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(e), or a total of seventeen (17) days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation.  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Vincent Briccetti, at the United States District Court, Southern District of New York, United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Briccetti.

Dated: September 16, 2015
     White Plains, NY

Respectfully submitted,

LISA MARGARET SMITH
United States Magistrate Judge
Southern District of New York

A copy of the foregoing Report and Recommendation has been mailed to the *Pro Se* Petitioner